Good afternoon, Your Honors. I am Georgina Araneta from Raleigh, North Carolina, and I have before you a case concerning the sentencing of a gentleman by Mr. Roger Camp. And basically, in our appeal, we have three sentencing issues. We have an ineffective assistance of counsel claim and a judicial participation claim. On the ineffective assistance of counsel claim, I do not need to be heard and just wish to rest on the arguments made on the briefs. I would like to start, however, with the sentencing issues. Basically, we have two issues that deal with the amount of loss, and then we have another issue that deals with the application of a two-level enhancement concerning the use of sophisticated means. And it's my position and my client's position that the district court erred when it applied an 18-level enhancement for the amount of loss. And the gist of our argument on this is basically, according to the guidelines, the government had to present the fair market value of the collateralized property, which was real estate, which in the end was a shopping center located in Mebane, North Carolina. And they had to present the fair market value at the date of the plea of Mr. Camp, which was in April of 2012. And this was not done. Which property are you talking about again? Okay. The Keystone or the... Yes, the Keystone, actually, Keysource Bank. And Keysource Bank... And which, where in the sentencing guidelines do you find that they had to present the fair market value of that? That had to do with the application notes, application note three. Right. It is subsection E, where it says credits against loss. Subsection E2 says that where the collateral is pledged or otherwise provided, the loss amount is to be reduced by the amount the victim has recovered at the time of sentencing from the disposition of the collateral, or if the collateral has not been disposed of, the fair market value. The collateral had been disposed of at the time of sentencing, hadn't it? Well, basically, our position is that it's actually... Well, had the collateral been disposed of at the time of sentencing? It had been disposed of, but it was purchased by the bank. Well, there's no exception in this application note. You're saying it's a scam transaction or something? Well, I'm claiming that it's application note subsection three that actually applies because key source provided a mortgage. That's what they did, and it says, notwithstanding clause two, in the case of fraud involving a mortgage loan, if the... well, they go on to say that if it has not been disposed of at the time of sentencing, you have to use the fair market value. Right. That's the same note I'm looking at. If it has not been disposed of at the time of sentencing, and this had been disposed of at the time of sentencing, correct? You are correct. However, it's our position when it's the same entity that bought it back at a bankruptcy proceeding that they still were required to present some evidence of the fair market value. And what's the basis for that argument? Well, it was the same... I mean, there is no legal basis if you're asking for a case law. Isn't that evidence of fair market value anyway? Was somebody willing to pay for it? Well, if it's the same bank that... Same bank or not. Is there anything in this record to indicate anybody else wanted to pay anything for that property? Well, as I understand, the bankruptcy... I understand that there isn't. Is there any indication in the record that anybody else wanted to pay anything for that property? I am not aware, Your Honor. Not in the record.  They had a foreclosure sale, didn't they? Yes, they did, Your Honor. And the bank paid $1.5 million. Correct. And that's what you say is insufficient. I mean, $1.5 million is insufficient, you say. But there wasn't anybody there bidding $2 million or anything. Well, the thing is... If it had been worth $5 million or whatever it is you think it's worth, somebody would have showed up and offered two or three problems. Well, part of the problem, this happened during our great recession, during the financial crisis. Well, that's the fair market value then. At the time, the bottom went out of it. Do you have any other argument to make on loss? The next argument that I have concerns Capital Bank. Capital Bank, basically, this was a loan of $2 million that was secured by a UCC-1 filing. And, again, also, in this particular case, they were required to determine the fair market value, which was not done at the time of the guilty plea in April of 2012. Why do you say that? Well, because there just wasn't any evidence from the government.  And one of the problems that I had with the valuations of what the property was sold for is that they were looking at values of a bankruptcy proceeding that started in 2011. And the plea was put in in April of 2012. And going back through the record, there's not a date that the government relied upon. Do you think there's any argument you made here? I don't think you made it, but maybe I'm wrong. Between actual loss and intended loss in this case? Well, yes, and that's another issue. Well, make that distinction for me. What difference does that make to your argument as for the enhancement? Okay. Well, I would say- It may not be an enhancement, just a number of points. Right, right. The client from the very beginning has been claiming that there was no intended loss because he was, for example, for the Capital Bank loan, there were three guarantors. Camp was a guarantor along with- Are you making a distinction between somebody who goes to the bank with fraudulent documents with the sole purpose or with the purpose of trying to get money and walking away with the money- Correct. As compared to somebody who takes forged documents to get the money, but he's not intending to walk away with that money. He's intending to pay it back but still make a big old profit of putting it in his pocket. Well, I'm not sure what kind of profit they were expecting. Well, I said are you making the difference between those people? Yes, that is correct, Your Honor. And so you want to claim that the losses that he just, when he went and borrowed the money to try to do right, the economy collapsed and he can't help that, but he never intended for a loss in those scenarios. And that is correct because just as evidence of this, the Key Source Bank, what they did is they paid off the previous mortgage. What do you do with actual loss, though, in this case? What do you do with actual loss in this case? Can you get over $2.5 million on this record on actual loss? Isn't $2.5 the cutoff point? It is the cutoff point, but the argument that I was making is that at sentencing, the government did not present. And, again, we're saying- They presented some actual loss. Didn't the bank lose $2.3 million? That is what they relied on, but we're saying there was- I know- Yes, you are correct. You lost that argument, perhaps, but you have, for the purpose of my question to you, on the loss, that the bank paid $1.5 million, didn't that leave a net loss of $2.3 million? Correct. Okay. I'm saying you don't concede that point, but if it does, then don't we have actual losses in the record, in addition, that would add to that $2.3 million and get us to $2.5? Well, it's our position, though, that that value was not correct because- $2.3 is not correct. Correct. Right. As Judge Shedd said, if that's correct, you only need $200,000 more, and then you're up there to where the government needed to be. Right. And you get 18 levels. Right. And so it's our position, for example, that Capital Bank, that loss should not be counted, again, because- If you take out the Capital Bank, they count the Trust Atlantic Bank. Well, actually, those- $2.5 million, that puts you up there above the $2.5 million. But money was not given out by Trust Atlantic Bank, and North State Bank has repaid all its money. And the pre-sentence report in Appendix 758 states that both banks sustained no losses when it was trying to come up with the restitution amounts. What about Timothy Buckley? Right. Timothy Buckley- I'm not asking who he is. I'm just talking about as to the losses he incurred. What about adding his losses? Well, I would submit that he- $250,000, that puts you up there above it. Right. But I would sustain that his actual loss was $125,000 because there were two separate loans. There was a loan for $250,000, and that was not-that was given without any fraudulent or deceitful actions. And then there was the second one where the $125,000- So you claim that the $250,000 is not even related? I'm not saying that it's not related, but- You mean-well, what are you saying, then? He does count that against your guy, didn't he? He did, and that's-we're saying that should not have been included. Why? Why? Because this was supposed to be for fraud and deceit. There was no fraud or deceit in getting that loan. But what about the entire scheme, though? Was that money taken and used at all? And every-was that money-that money wasn't held separate and apart to buy a vacation home or something, was it? No, it was not. It was put in this business. Correct. Right. Okay. And, again, the whole goal of all these investments was to keep the shopping center alive and to create a viable investment, a bowling alley. And remodeling that bowling alley, weren't they? Correct. And that's where the expenses actually came through, because from Key Source, they used about $1.5 million to upfit, and then the Capital Source Bank was also used for upfitting. In the end, there was evidence in the record that the property, once these improvements had been made, was worth $5.1 million. And so my client, his position is that basically the government-sorry-the government did not prove its position for the amount of loss with Key Source Bank because it was the same bank who bought it. And so the losses were on paper. Key Source is the key to your position here. Is that right? Well, I would say yes. But also with Capital Bank, the fact that it was secured and that Camp also invested about- If you knock those two out, you've got it down there, don't you? If you knock those two out, that's $4 million that you want to knock out of there. I understand. But I would like to minimize the losses from Capital Bank and try to keep it out of the level 18. Right. We understand that. You've got some other points here that you need to- Yes, that is correct. If you're not successful on that 18, you've got the sophisticated means. Right. And you say that Judge Boyle strong-armed a plea. Correct. You've got some things like that, too. Right. So basically we have claimed that two-level enhancement was not correct because the- So basically the actions consisted of forging signatures and altering documents. And there's no evidence that any of the documents presented to the banks from my client involved more than whiting out dates, recopying, scanning, or other information of existing documents that were altered. He claims this was not a sophisticated scheme. His actions were done to protect the investments that were related to the other entities. And once again, it goes back to his intent. And his intent was not to have any actual loss for anyone. He was trying to hide the real facts from the banks, though. I understand that. And that was done. He pled guilty, didn't he? He did. And that goes- He pled guilty to the entire indictment. Right? He did, Your Honor. Did somebody forge his name on or stand in for him at the plea colloquy? Actually, it was a straight-up plea, Your Honor. A straight-up? A straight-up. And that's where the final argument concerning judicial participation comes in. It's my client's position that the district court judge was involved in his plea negotiations and the questioning of the witnesses- What you're arguing is he made a statement from the bench about how strong the case was. After the government presented its case in chief, the judge said this is one of the strongest cases I've ever seen. And then the defense counsel went out and conferred with his client, and they came back in and pled guilty. How's that participating in plea negotiations? There weren't any negotiations. He pled straight up. Well, the point is that after the judge gave his opinion as to the strength of the government evidence, he also mentioned about perjury and obstruction of justice. He did. And so- He did. What's wrong with that? You can't tell a witness. Can't you tell a witness? You're about to take the stand. I want to tell you this much. You certainly may take the stand. But if you take the stand and tell a lie, and I find it to be a lie, and it's perjury, I'm going to enhance you for that at sentencing. Isn't that entirely proper? Well, my client felt that that was not proper. Under the law of this circuit, is that proper? Well, I would say it is. It was solid legal advice, as the judge said, from the bench during the course of the proceedings after hearing the evidence. Well, the judge- And seeing the evidence. A lot of this was these documents that had been falsified. I understand. But my client- But that's a comment on the evidence, which is proper. But are you suggesting that a judge can't say to somebody, if you don't tell the truth, you can be charged with obstruction of justice or perjury? A judge can't say the truth in the courtroom? But he didn't word it like that. And so my client felt intimidated. He says, you know what happens in court, but perjury is a specter and obstruction of justice or whatever. The import of that is you better not lie and obstruct justice. Isn't that what it is? Well, that's not how my client interpreted it, Your Honor. What did your client take that as? Well, basically, he took it as that the judge was, in his words, he felt that the district court judge was impartial throughout the trial. He felt that he was abusive, prejudicial, coercive, and determined to participate. That's your argument. Well, this is- That doesn't show up from the record as to what he felt because he didn't testify. But this is how my client interpreted the judge's actions. That's what he's saying now. But you weren't the counsel, right? Correct. I was not the counsel. The lawyer then was ineffective constitutionally right there on the spot, which you haven't argued much today, but for letting him plead guilty? Well, it was more with the sentencing about- Oh, the way he dealt with the sentencing he was ineffective. Correct. And that jumps right off the page. You got any other issues you haven't raised? Well, my time is up, but just very quickly- And you've got some other time, too. You save a few more minutes. Okay. And basically, separate and apart from the plea negotiations, he felt the judge engaged in judicial participation in the question- Why is it all that way? That's wrapped up by the plea. You're not going- Okay. All right. You plead guilty. The trial, to the extent it went on, is wiped away. I mean, you plead guilty. He came in and he pled straight up to the entire indictment. And there was no plea agreement. Right. My client, in the end, would like a new trial. Right. He'd like a new trial. He wants to get out of it. But you don't even ask a set-aside to plea. You're arguing, or maybe you do, inferentially. I am, just because of the judicial participation. And then, basically, also, if that will not be granted, a resentencing to allow him to introduce or have the government introduce the fair market value. Okay. Let us see what the government has to say about this. And you have a few minutes left. Ms. Fritz? Yes, thank you, Your Honor. Thank you, Your Honor. Were you the prosecutor? I was not the prosecutor. May I please? We don't have anybody here that was in the court proceeding today. No, you do not. That being said, this case is about a sophisticated businessman who induced financial institutions to loan him money by overstating his own assets and by exploiting the success and reputation of his good friend, Mr. Buckley. The defendant may have deceived these banks, but the district court was not so easily fooled. The court correctly calculated the loss, enhanced for sophisticated means, calculated restitution. Where's the loss? Where's the actual loss? Can you point to actual loss of $2.5 million? Yes. All right. Where is that? First of all, you have the $2.3 million loss. I'm with you on that. Okay. Now, the capital bank loan was for $200 million. It was secured by business chattels. $2 million. $2 million. Yes. You said $200 million. Oh, I'm sorry. $2 million. It was secured by the business chattel, the bowling pins, the restaurant equipment. Now, importantly, the bank did not perceive this loan as being fully collateralized by those items of business chattel. That's precisely why the defendant needed to fabricate Buckley's guarantee. Although at sentencing there was not specific evidence provided about the value of the business chattels, during the trial, one of the witnesses, Haas-Stetler, on pages 177 through 178 of the record, he says, quote, the collateral was mostly negligible. That's not to say it wasn't available and wasn't a real asset. But the secondary market, if the bank were to take bowling pins and bowling balls and chairs and tables and food inventory and try to resell it on the secondary market, it would bring virtually no value to the bank. So I would submit to you that there is no conceivable way that that loan would have resulted in less than $200,000 worth of loss. Because you're doing that by taking the amount of the loss and subtracting zero from it? I am saying that the collateral is a real asset, but it's negligible. You're kind of shouting a little bit. Oh, I'm sorry. It's negligible in comparison to the- I thought you said that it would be zero. Did he say that? What did he say, negligible, or what did he just say? He said that the value of the collateral was negligible. So your point is you're assigning zero or something to that? You'd give him $200,000 today. You'd give him more than you would give him at sentencing. I think that based upon the information available at sentencing, the bankruptcy trustee estimated that there was about $1.9 million outstanding on that loan. But is that an actual loss in terms of the guidelines, or is that- Do you see a distinction between the scenarios I set up with an actual loss and an intended loss? Let's look at intended. And we have a scheme under which a person just tries to bilk a bank. They just go in there with forged documents. They say it's a check from you, and they take $2 million. Okay. Versus going in and trying to set up with fraudulent documents to get financing that they believe will turn into a profit. They can pay back the loan. There's no intended loss. And the second scenario is there may be actual loss, but is there any intended loss? He doesn't intend for the bank to lose the money. He intends for the bank to be repaid with his ongoing business, doesn't he? The defendant may have intended. Then it wouldn't be an intended. But how does he get hit with an intended loss? The burden's on the government on the amount of loss, right? Yes. Do you see a distinction between those two kinds of losses, an intended loss where the person is trying to rob money from the bank or steal it from the bank, and one where he just is not a good businessman and he ends up not—or the economy goes bad, and he just—but he never intended for it to be a loss. He intended for it to be an ongoing business to repay the loan and to make money himself. That's not part of his criminal activity as far as he's—losses count against him, is it? I think it would be because that would be reasonably foreseeable pecuniary harm. No, it wouldn't be, not if he thought under the conditions that—I'm just going to say we'll move on. He goes in in a good economy. He does forge a document because he's trying to build his empire, and he gets a $2 million loan. And from all of his projections from his accountant at that point, he can make $8 million on the project. Then the economy goes south, and he loses everything, including that $2 million loan to him. That's not an intended loss. That's not a foreseeable pecuniary loss. That's just, you know, the economy caught up with him. Why would that be an intended loss under his scheme? Well, I think that some of the factual premises in your question are— That was my hypothetical to point the difference to that. OK. In this case, however, the economy was going down when he was making these negotiations. OK, so take my hypothetical. He thought he was smart enough to beat the economy, and he had something that would sell. That may be bad judgment. It could be stupid. But why is that a fraud loss? Because he didn't—the guideline says actual loss or intended loss. What was that? It says intended loss means the pecuniary harm that was intended to result from the offense. Is there any evidence that he intended to take that money and put it in his pocket and not try to salvage his company? There's not any evidence of that, is there? Not with respect to Capital Bank. It is pretty— With what else is there? I think that, for example, if you look at Trust Atlantic, he was in the process of negotiating $500,000 of a loan there. And he fraudulently presented Buckley as a guarantor. Did he get the money? He did not get the money, but he intended to— To do what with it? Hopefully save this sinking ship. But he didn't intend for that to be a loss, did he? Under the circumstances where he knows that his cash flow is in bad shape. He knows that he's not meeting obligations. But that's just—you're just dinging him for bad judgment. No, I'm— Let me ask you this much. Let me ask you this much. Can you find it in actual losses? What about Timothy—what did we do with Timothy Buckley on that—look at that personal loan for $250,000? What do you do about that? The loans to Timothy Buckley are also actual losses. So, I mean, if you look at the— But did he get back some collateral or some interest in an ongoing operation or something at that time for that note? It is not clear with respect to the $250,000 whether there was an exchange of any collateral. With the $125,000 loan that was later issued, I believe that in that case, Buckley requested that there be an assignment of the defendant's or a pledge of collateral of the defendant's interest in PCI. I am not aware of the record supporting there being any collateral for the $250,000. Give me that loan from Buckley. I don't understand. How did you get to the $250,000 actual loss number? I just can't find it. I read it, but I can't find it in the pre-sentence report right now. I thought that that was collateralized at some point, but the value—am I wrong about that? I—actually, I retake that. I take that back. You are correct, Your Honor. On page 444 of the JA, the $250,000 was to be secured by collateral in PCI. Right, and how much is that collateral worth now? I am uncertain. Let me ask you this. How can he be deemed with $250,000 if the government doesn't know the value of the collateral? Because isn't actual loss the amount put in less the amount retained? And isn't that burden on the government? Yes, it is. And where do you meet that burden on that $250,000 there? At that time, the collateral was in bankruptcy proceedings, and the exact value of what the defendant's percentage interest in PCI is not clear. But the bottom line for purposes of the loss calculation is that the court is only required to make a reasonable estimation of loss, and the reasonable estimation of loss from this scheme is over the $2.5 million mark. Well, no. I've got—listen. I'm just going to ask you a moment. I see the 2.3. That makes sense to me. I'm trying to find—see that $150,000 loan, North State loan, and the $125,000 loan. That won't get you there. I'm looking at that $255,000 and $250,000 because that will get you over on actual loss, and I'm trying to figure out how do we value that $250,000. It appears to me the state of the record is he loaned $250,000 that was collateralized, and the collateral was worth something but we don't know how much. How is that not just speculation? Because you have to get $200,000 loss out of that, don't you? Again, I would suggest that the district court is charged with making a reasonable estimation of the loss, and that property is in the bankruptcy estate. And at that time— It's not worth something. At that time, Mr. Buckley had not received a dime of his money back. But then the burden's on you to value that. You just can't go in there and say Exxon Oil's in bankruptcy, so his stock's worth zero. It may be a restructuring. You may have assets. People may get paid out of bankruptcy. I just don't see how you put the lack of the government— maybe you showed it somewhere, but you haven't told me, and I couldn't find it. How do you put the lack of the government coming forward and meeting their burden? How does that fall on a defendant? I think that, again, if you look at the scheme, it was clearly over $2.5 million. In this case, the government presented ample evidence to support a finding of loss exceeding that, and I would note that with respect to Mr. Buckley, who is primarily raised in the restitution component of the defendant's argument, the defendant did not argue or did not object to that restitution amount. He objected to the calculations for the losses, though. He didn't object to the restitution? He did not object to the restitution. He doesn't raise that on appeal? He does raise that on appeal. So that's a plain error review? Yes, and he cannot meet that. May I say something? It's not a plain error review if his objections to the findings on losses— that fairly takes into account the restitution award, doesn't it, because the restitution award is based on the loss calculations, isn't it? No, I would disagree. It doesn't? The loss calculations, the way the guidelines are written— How do you get the restitution if you don't figure out how much you've lost? Well, I think that because of how the loss— That's not possible, is it? You don't know how much you have to give in restitution unless you first calculate how much that person has lost. Isn't that correct? Yes, but the guideline talks in terms of actual loss or intended loss, and it instructs the court to take into account the greater of the two. So there may very well be a case where the loss is counted, such as in Trust Atlantic, where there is a $500,000 loss. Now, Trust Atlantic never loaned that money out, so while there is a loss for purpose of the guideline's loss calculation, Trust Atlantic has certainly not owned restitution. How do we know that the court took into account the very question I asked you about intended loss? What does intended loss in the guideline mean? Was that even discussed? Intended loss, to make the distinction that I'm asking you? I don't believe that there was such a discussion. I think the court had sat through the trial, was familiar with the evidence, and was comfortable with saying that under these circumstances— The court still has it in the proper calculation zone, losses. Yes. And the court did make a reasonable calculation here. Now, does Mr. Buckley, did he want to complain on this fellow turning him in? Actually, my understanding of the record is that Trust Atlantic notified the Raleigh Police Department. That's how they caught him? Yes. But Buckley's deemed a victim here, and he gets restitution. Yes. Some of this evidence looked like Buckley was right in the middle of it, didn't it? These falsified documents. Absolutely not. Buckley— Interest that he didn't own and taken interest that he didn't buy and things like that. If you're talking about the 24% interest that was transferred, that was the defendant's idea. It was his idea, but this fellow signed the papers. Well, the defendant— He didn't sign them back after they made the loan. No, the defendant transferred the 24% to him, and the defendant's purported rationale was that the defendant did not want to be both the lessee and the lessor. So by transferring the 24% over to Buckley, he could sign on behalf of FEC. Buckley had made very clear that he was not interested in investing in FEC, and once that had transpired, Buckley did sign that back to him, and Buckley absolutely signed the lease on behalf of SEC. Buckley did not sign a guarantee on behalf of FEC to guarantee the rental. That was forged and altered. There were several times that they forged his name, right? Oh, many times. He forged his names. He falsified financial records that purported to be Buckley's, and what was interesting about the financial records is the defendant drew on his knowledge of being Buckley's friend for over a decade and mixed truth with fiction. He knew where Buckley had certain properties. He would falsify the value of those properties, say that they were paid off. He knew where Buckley had a number of his assets, and again, he would overstate those. The evidence at trial showed that Buckley was not aware of this fraud or his reputation, his good name being used until February 2011 when that letter arrived at his house, and then he promptly followed up, and that was from Capital Bank, and what's interesting is he also had some qualms about Key Source Bank, and when he first called the PCI attorney about that, he asked, am I in any way a guarantor on this Key Bank thing? And the PCI attorney looked at the closing documents and said, no, you're not, and that, again, that goes to the sophisticated means. The defendant had structured the transaction. It was his idea how to structure the transaction where Buckley was a guarantor of rents to FEC, and then that was reassigned over to the lender, so the lender had all of Buckley's information that had been provided by the defendant. Is the court asking too many questions or pressuring the defendant to plead guilty? I think that that is a . . . Let's take one at a time. What do you think about the judge asking too many questions? What do you think about that? Your response is what? The judge asked clarification questions. Is that waived? Is that argument waived by the guilty plea? Yes, I would suggest that it is. It is waived by the guilty plea, and a court does have the prerogative to oversee the method and mode of how information comes in. What do you make with those comments at the conclusion of the government's case, the comments by the judge at the conclusion of the government's case? Those . . . well, first of all, there was no plea negotiation. This was at the close of the government's case, outside of the presence of the jury. The court asked the defendant, do you want to go forward with this trial? The court is entirely within its discretion to give the defendant some time to think over, having seen the government's case, what the government wanted to . . . Well, the argument is not that the court said, do you want to think about it? That's not what the argument is, is it? You never know what happens in court with perjury as a specter and obstruction of justice and whatever. I've tried a few cases, and I can only remember one other one. I won't go into it. Where something like the evidence that just came out, came out. That's not just saying, think about it, is it? What about those comments? Those comments, the reference to the prior case and perjury, I think it's essentially the court suggesting that the defendant proceed with caution. The defendant is listed as a witness on his own witness list. The defendant's opening statement suggested that he was going to take the stand and tell his side of the story. The court was aware that the defendant had already provided testimony in the bankruptcy case. I know the context of it. I'm asking you about what do we do with the . . . What's the legal significance, if any, of those comments by the judge? There's nothing wrong with those comments by the judge. It was, as Judge King stated, it was sound legal advice. Take a moment to think about this. And the defendant came back, and he decided to plead guilty. And the defendant was asked during the Rule 11 plea, are you sure? Are you under any pressure? And the defendant's response at one point is, I'm cooked in this trial. The defendant acknowledged, he saw the evidence against him, and he made the informed decision to plead guilty. And, in fact, although the PSR had initially not awarded him acceptance of responsibility, he strongly argued in his objections that because he had come forward and pleaded guilty, he should receive the benefit of that. There's nothing that suggests that this is an involuntary or coerced guilty plea. Now, with respect to sophisticated means, I would like to point out one or two other ways in which this was sophisticated, beyond just the forging of the document. And I mentioned before the transfer with a 24% interest. If we think the loss number is not in the record, what would you propose we do? If the justification for the 18 points because of the amount of the loss is not in the record, what do you suggest we do? Remand it for further consideration on the record as it existed to make those arguments, or what do we do? Do you get another bite at the apple? If the court were to find that the loss was not supported, which- Yes, you don't agree with. No, we don't agree with that. Then it would, I guess the remedy would be to remand. Unless, of course, the court is confident after having reviewed the transcript that the district court would have imposed this same sentence. The court did not make reference to having imposed an alternative sentence. But the court did, throughout the sentencing hearing, make a number of comments which suggest that this was the sentence. Do you think there's any argument to be made by the government that the government was in the process of charting out all the losses, and the district court basically cut you off and just sort of said what he agreed the number was? Yes. Did that happen? I think that you could make that argument because we were in the process of setting forth the evidence, and the court says, look, I'm satisfied. We only need to get to 2.5, right? So to the extent that there would be a remand, we should be permitted to- Did you say you, in the process of charting it out, the government just from-excuse me, the court from its own involvement knew the numbers and said, that's enough. You established it. Yes. May I have a moment to make a closing statement? Your red light's on. Okay. You've covered about everything. Thank you very much. I ask that you affirm the judgment of the district court. Thank you. There you've got a closing statement. He got one. Ms. Fritz, we appreciate it. And Ms. Areneda? Thank you, Your Honors. I will be very brief. Going back to the total amount of loss, 2B1.1, in the section about credits against loss, I'm going to reiterate my position that I really do not believe that the way this is worded, that when it's the same entity that is sustaining the loss and is rebuying the loss, I believe it was not meant to-this wording about what was the amount of disposition of the collateral, I think we need to make a distinction in that the victim-for example, in subsection 2, they say the victim recovered at the time of sentencing from disposition of the collateral, where the victim was Keysource Bank. At the same time, Keysource Bank was also the buyer of the collateral. Keysource Bank, we do not know if they were still the owner at the time of the sentencing. So if it's still the same party-so I guess what I'm saying, if it's the victim and the victim is still the owner of the property, I think it's just too early to tell the amount of loss. Do you think in rebuttal-that's the very strongest point you have to make in rebuttal.  Well- To go back to the first point you argued in the case. I was just going to very briefly-the other point that I was going to make had to do with Capital Loan Bank. And the bank official, Hustetler, when he said why would a bank-he was talking about the UCC filing had no value. Well, my question would be, well, why would a bank do a UCC filing if it has no value? They don't just go through these exercises and they executed a security agreement. So basically what I ask is for a resentencing remand as to the amount of loss. Thank you. Thank you very much. And we appreciate your efforts, Ms. Arenada. You're also court-appointed, and we appreciate you taking it on and helping us out with this case. Thank you very much.
judges: Robert B. King, Dennis W. Shedd, Stephanie D. Thacker